IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOAN FUSCO,                                )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )          No.  05-1245-WEB
                                           )
INSURANCE PLANNING CENTER,                 )
                                           )
                    Defendant.             )
_____)

**Memorandum and Order**

This matter came before the court on May 3, 2006, for a hearing on plaintiff's motion to disqualify

defense counsel. (Doc. 30).  After hearing evidence and arguments, the court orally denied the motion.

This written memorandum will supplement the court's oral ruling.

I. *Summary*.

Plaintiff Joan Fusco filed this action on July 29, 2005, against her former employer, defendant

Insurance Planning Center ("IPC").  In her complaint, plaintiff alleges that IPC violated her rights under the

Equal Pay Act by paying greater compensation to male employees performing equivalent work.  She also

contends the defendant terminated her employment in retaliation for complaining about the Equal Pay

violations, that the defendant breached the terms of a written employment agreement, and that defendant

violated Kansas law by failing to pay her the wages and commissions she was due.  Plaintiff seeks actual

and punitive damages as well as attorney fees and costs.  Defendant IPC denies the allegations.  Both

parties have now filed motions to amend their pleadings.

IPC was initially represented in this action by attorney Daniel Sevart.  After Mr. Sevart's death,

attorney Terry Mann of the Martin, Pringle law firm entered her appearance on behalf of IPC, on February 2, 2006.  Doc. 9.  On April 17, 2006, plaintiff filed a motion to disqualify Ms. Mann and her law firm from representing IPC.  Doc. 30.  The motion alleges that Ms. Fusco met with Ms. Mann on May 11, 2005, prior to the filing of this action, to seek legal advice about potential claims against IPC.  Doc. 31 at p.2.  Plaintiff's brief asserts that during this meeting Ms. Fusco "made admissions about her termination which could be used by IPC's counsel to Fusco's detriment," that these admissions would likely never come to light without Ms. Mann's involvement in the trial, and that Ms. Fusco provided "key factual details and information" about her claim "which she believed would be kept in confidence."  *Id*.  Plaintiff's motion further alleges that after she disclosed such confidential information, Ms. Mann explained to her that she had a conflict of interest and could not represent her.  Ms. Mann then referred plaintiff to her current counsel, Ms. Webb.

The motion alleges that after plaintiff's counsel learned of the allegations, she and Ms. Mann spoke and exchanged e-mails.  According to the attachments provided to the court, Ms. Mann reviewed her file and confirmed she had spoken briefly with Ms. Fusco on May 11, 2005, but said no attorney-client relationship had been formed and that Ms. Fusco had not disclosed any confidential information or information that would provide an advantage in the litigation.

Plaintiff argues that Ms. Mann's representation of IPC violates Rule 1.9 of the Kansas Rules of Professional Conduct, which provides that "A lawyer who has formerly represented a client in the matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents...."  Plaintiff argues that the Kansas Supreme Court has recognized the existence of an attorney-

client relationship under similar facts. *Citing City of Hutchinson v. Gilmore*, 16 Kan.App.2d 646 (1992) and *State v. Leigh*, 178 Kan. 549 (1955). Because there was an attorney-client relationship, plaintiff says, an irrebuttable presumption arises by law that Ms. Mann acquired confidential information from the relationship. *Citing Chrispens v. Coastal Refining & Marketing*, 257 Kan. 745 (1992). Plaintiff thus contends Ms. Mann (and also the Martin, Pringle firm by virtue of Rule 1.10) should be disqualified. Plaintiff further argues the representation violates Canon 9, which provides that a lawyer should avoid even the appearance of impropriety. Plaintiff argues that the strong policy in favor of preserving a client's confidences in this instance outweighs any interest of the defendant in choosing its own counsel.

Plaintiff has provided to the court for *in camera* review an affidavit of Ms. Fusco containing what she asserts is confidential information, which she says she provided to Ms. Mann during the May 11, 2005, phone call.[1]

In response, defendant IPC contends that Ms. Mann and the plaintiff spoke very briefly on the phone on May 11, 2005. Defendant contends the conversation lasted only long enough for Ms. Mann to determine that plaintiff was interested in bringing an employment case, and that when Ms. Mann realized this, she offered plaintiff the names of other attorneys who might represent her. According to Ms. Mann's testimony, no factual details were provided by plaintiff other than general information that plaintiff had an employment case and needed counsel. Ms. Mann estimated the conversation lasted no more than a minute or so (as opposed to plaintiff's estimate of ten minutes) and she cited her contemporaneous notes of the call as evidence of that fact. Ms. Mann testified that her regular practice is to take extensive notes during

---

[1] At the May 3, 2006, hearing, plaintiff's counsel conceded that Ms. Fusco's conversation with Ms. Mann on May 11, 2005, occurred by way of phone call rather than in a face-to-face meeting.

such conversations.  In this instance, her notes merely state that Ms. Fusco had called at 3:45 and that her

"empl[oyment] case - [was] referred to" three other attorneys.  Ms. Mann pointed out that her notes

indicate she did not even ask for the name of plaintiff's employer -- which is ordinarily the first thing she

would do when interviewing a potential client, so as to check for any conflicts[2] -- because she was not

interested in taking the case.  Ms. Mann said her firm is very restrictive about taking cases on a contingency

fee and rarely represents plaintiffs in employment litigation, and that she personally has not handled such

a case in the last five years or so.  Ms. Mann further said her firm's automated tracking system for phone

calls would have logged this call had it lasted for more than a minute or two, but a check of the firm's

system showed no such notation.  Ms. Mann testified that plaintiff did not provide her any confidential

information during the call, and that she gave plaintiff no legal advice about the matter.        Defendant

notes that plaintiff bears the burden of proving a violation of Rule 1.9, including a showing that the plaintiff

submitted confidential information to the lawyer, and that she did so with the reasonable belief that the

lawyer was acting as her attorney.  *Citing Hall v. Martin*, 1999 U.S. LEXIS 14790 (D. Kan. 1999).

Defendant argues that the facts, as well as a consideration of the factors in *Chrispens*, show there was

never any attorney-client relationship formed between Ms. Mann and plaintiff.  Defendant further argues

that the timing and form of plaintiff's objection suggest it amounts to nothing more than harassment of IPC

and its counsel.

    II.  *Discussion*.

---

    [2] Plaintiff asserts that during the call Ms. Mann explained she had a conflict and could not represent
her in the matter.  Doc. 31 at p. 2.  As defendant points out, however, Ms. Mann's notes reflect no such
conversation.  Moreover, defendant asserts that as of the date of the call, neither Ms. Mann nor the Martin,
Pringle firm had ever represented IPC.  Doc. 37 at p. 4.

By local rule, this court has adopted the Kansas Rules of Professional Responsibility, including KRPC 1.9. *See* D.Kan.R. 83.6.1(a). The threshold issue under this rule is whether an attorney-client relationship was formed that would subject the lawyer to the ethical obligation of preserving confidential communications. *See Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1384 (10th Cir. 1994). The parties need not have executed a contract or paid fees for there to be an attorney-client relationship, but the party asserting the relationship (in this case the plaintiff) must show: (1) that she submitted confidential information to the lawyer; and (2) that she did so with the reasonable belief that the lawyer was acting as her attorney. *Id.*; *see also State v. Drach*, 268 Kan. 636 (2000). As Judge Marten noted in *Harrod v. City of Salina*, 1997 WL 624880 (D. Kan. 1997), resolving conflict-of-interest questions is primarily the responsibility of the lawyer undertaking the representation. *Id.* at *2 (*citing* Kansas Comment to MRPC 1.7). Moreover, challenges to opposing counsel are viewed with caution, because such challenges are potentially subject to abuse.

After reviewing the briefs and the evidence presented, the court concludes plaintiff has failed to show the existence of an attorney-client relationship between herself and Ms. Mann. The materials submitted show without question that the conversation on May 11, 2005, was very brief, and almost certainly involved only a preliminary description of the nature of the plaintiff's claim. Ms. Mann's notes from the conversation strongly support a finding that plaintiff passed no confidential details to her about the case. *Cf. Harrod v. City of Salina, supra* (no attorney-client relationship formed where defendant called to see if the attorney would represent her; defendant merely relayed a brief description of the allegations in the case and did not seek or receive legal advice during the call). Ms. Mann's testimony and other evidence support that conclusion as well. This is in clear contrast to the facts of *State v. Leigh*, 178 Kan.

549, 550-51 (1955), where it was undisputed that the defendant provided to the lawyer all of the information he had about the case, including the facts pertaining to his defense.  And while plaintiff's affidavit in the instant case asserts that she relayed confidential information to Ms. Mann, the court notes that plaintiff apparently spoke with at least three lawyers (including Ms. Mann) during this same period, making it entirely likely that plaintiff is mixing up the details of her conversations with these other attorneys and her brief phone call with Ms. Mann.  The evidence here shows the conversation involving Ms. Mann did not even progress to a discussion of plaintiff's employer or the details surrounding her potential claim.

Kansas law provides that an implied attorney-client contract may be found when the advice and assistance of the attorney are sought and received in matters pertinent to the lawyer's profession.  *Drach*, 268 Kan. at 645.  Although plaintiff contacted Ms. Mann to see if she would represent her, there is no persuasive showing that the conversation involved confidential matters or information that would be useful against plaintiff in the litigation.  Nor has a showing been made that anything about the conversation would reasonably lead plaintiff to think that Ms. Mann was acting as her attorney.  There is no showing that Ms. Mann offered any advice, except to refer plaintiff to other attorneys who might take her case.  Under the circumstances, the court finds there is no conflict of interest, and it will deny the plaintiff's motion to disqualify Ms. Mann and her firm.

III.  *Conclusion*.

Plaintiff's Motion to Disqualify Counsel (Doc. 30) is DENIED.  IT IS SO ORDERED this  3rd  Day of May, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown

6

U.S. Senior District Judge