# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOAN FUSCO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-1245-WEB-DWB |
| ) | |
| INSURANCE PLANNING CENTER, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Compel, and supporting memorandum, requesting that the Court order Defendant to respond to several requests contained in Plaintiff's second Request for Production of Documents. (Docs. 80, 81.)  Defendant responded to the motion (Doc. 90) and Plaintiff filed a reply.  (Doc. 96.)  Both parties have requested a hearing to make oral argument on the issues raised.  After carefully reviewing the submissions of the parties, the Court set the matter for oral argument on February 13, 2007.  After hearing arguments of counsel, the Court is prepared to rule on Plaintiff's motion.[1]

---

[1] Summaries of the facts and the parties' claims are contained in the Pretrial Order entered on November 7, 2006, and are incorporated by reference.  As such, a discussion of the case background will be unnecessary.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery into any matter, not privileged, that is relevant to the claim or defense of any party. "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." ***Audiotext Comm. Network, Inc., v. US Telecom, Inc.,*** No. 94-2395, 1995 WL 625962, at *3 (D. Kan. Oct. 5, 1995) (citing ***Smith v. MCI Telecomm. Corp.***, 137 F.R.D. 25, 27 (D. Kan.1991)).

"When the discovery sought appears relevant on its face, the party resisting the discovery bears the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." ***Dean v. Anderson***, No. 01-2599, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002). "The party opposing discovery cannot simply make conclusory allegations that the request is irrelevant, but must specifically show how each discovery request is irrelevant." ***Audiotext***, 1995 WL 625962, at *3 (citations omitted). "When 'relevancy is not apparent, [however], it

is the burden of the party seeking discovery to show the relevancy of the discovery request.'" ***Dean***, 2002 WL 1377729, at *2 (citing ***Steil v. Humana Kansas City, Inc.***, 197 F.R.D. 442, 445 (D. Kan. 2000)).  A request for discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  ***Haggard v. Standard Register Co.***, No. 01-2513, 2003 WL 365955 (D. Kan. Jan. 21, 2003).

Plaintiff argues that Defendant has insufficiently responded to Requests Nos. 6, 7, 14, 15, and 20[2] contained in Plaintiff's Second Requests for Production of Documents.  The Court will address each of these Requests in turn.

**A.     Request No. 6**.

Plaintiff's Request No. 6 seeks "any and all documents that describe how customer or client accounts at IPC have been assigned from January 1, 2000, to the present."  (Doc. 81, Exh. 2) (emphasis added).  Defendant objected that the request was vague, ambiguous, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.  (*Id*.)  More specifically, Defendant is concerned that the production of these documents would "provide the plaintiff with additional fodder to continue to solicit and/or attempt to obtain or accept insurance business

---

[2] Plaintiff's motion also references Request No. 22 (Doc. 81 at 3), but there is no discussion of that request in the parties' briefs.  Therefore, any issue as to Request No. 22 is waived.

from IPC customers." (Doc. 90 at 9.) Further, Defendant argues that it has had "hundreds of clients" during the time frame covered by the request, thus "[t]here are undoubtedly thousands of documents which show which producer/agent was working on the various accounts." (*Id.*)

Based on the Court's reading of Request No. 6, Plaintiff seeks information regarding "[h]ow the individual customer accounts were assigned to male and female producers" (Doc. 96 at 3), not the identities of the specific accounts or to which producer each specific account was assigned. In other words, Plaintiff seeks to discover Defendant's written policies and procedures, if any, for account assignment in effect during the relevant time period. The Court finds this interpretation of the request to be reasonable, and relevant.

At the hearing, Plaintiff's counsel indicated that they also sought information regarding which producer was assigned to each particular account and why the various assignments were made. The Court cannot agree that such a reading of Plaintiff's discovery request is reasonable, especially as a Request for Production. Other than written policies and procedures, if any, Plaintiff has not identified the types of documents that would address "how" or "why" a particular account was assigned to a specific producer. Further, Plaintiff deposed Defendant's owner, Mr. Winfrey, at which time she had ample opportunity to

4

inquire as to how and why assignments were made and what documents, if any, would contain information concerning this topic.  Even if Mr. Winfrey's testimony was not particularly helpful, as Plaintiff contends, the Court is at a loss to see how a list of all accounts that simply identifies the assigned producer would be responsive.  The Court does not anticipate that such a document would shed any light as to how or why the various assignments were made and Plaintiff has not convinced the Court otherwise.

As such, Plaintiff's motion regarding Request No. 6 is hereby **GRANTED** to the extent she seeks Defendant's written policies and/or procedures, if any, regarding how the assignment of accounts were to be made.  To the extent she seeks information regarding to which particular producers accounts were assigned, and why such assignments were made, this request is **DENIED**.

**B.    Request No. 7**.

Plaintiff's Request No. 7 seeks "any and all documents that reflect whether any raise was ever given to Margaret Cornish during her employment with IPC." (Doc. 81, Exh. 2.)  Defendant has objected that the request is both irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  (*Id.*)  More specifically, Defendant argues that the request is irrelevant because Ms. Cornish held "an entirely different job classification" than Plaintiff.  (Doc. 90 at

5

11.) Defendant continues that providing "unredacted portions of her personnel file would be contrary to existing law and is not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*) Defendant does, however, state that it is "willing to provide responses as to whether Cornish received raises during her employment..." (*Id.*) Defendant has not, however, provided any such documentation to Plaintiff. (Doc. 96 at 6.)

The Court finds the relevance of Plaintiff's discovery request to be tenuous at best. Not only was Ms. Cornish a customer service representative, an entirely different job position than held by Plaintiff, she is only one of several CSRs employed by Defendant during the relevant time frame. Plaintiff has not provided a sufficient explanation as to why information regarding Ms. Cornish would be more relevant than that of the other customer service representatives. Mindful, however, of "the ordinary presumption in favor of broad disclosure," ***Dean***, 2002 WL 1377729, at *2, the Court finds that information relating to raises Defendant may have given Ms. Cornish could be reasonably calculated to lead to the discovery of admissible information concerning Defendant's treatment of female employees and **GRANTS** this portion of Plaintiff's motion.

The Court, however, recognizes Defendant's concerns regarding the provision of unredacted portions of Ms. Cornish's personnel file. Therefore, the

Court finds that Defendant must provide Plaintiff with only documentation of all raises, if any, it gave to Ms. Cornish during her employment (including when the raise was given and the amount thereof). Any such documents, however, shall be redacted to conceal any and all of Ms. Cornish's personal information (other than her name and the date/amount of any such raise or raises).

**C.     Request No. 14**.

Plaintiff's Request No. 14 seeks a "complete list of clients and customers of IPC on January 1, 2000," the day her employment as a licensed insurance provider for Defendant became effective. (Doc. 77, ¶ 4(a)(2).) Plaintiff contends the requested information is relevant to Defendant's counterclaims because she "is entitled to learn which customers have allegedly been solicited and which customers were not customers when plaintiff began her employment." (Doc. 81 at 7.) Defendant argues that the request is not reasonably calculated to lead to the discovery of admissible evidence and "would result in defendant disclosing proprietary and confidential information to a competitor." (Doc. 90 at 11.)

In the Pretrial Order, Defendant states a specific amount of damages due to Plaintiff's solicitation of clients and another amount of damages due to her misappropriation of clients. (Doc. 77 at 35.) The clients Defendant alleges Plaintiff to have solicited and/or misappropriated are the only ones relevant to

Defendant's counterclaim and, thus, Plaintiff's discovery request.  Defendant contends that it "has produced certain relevant documents concerning those accounts it knows plaintiff has solicited or attempted to solicit."  (Doc. 90 at 12.)  Thus, the Court fails to see how Plaintiff has any legitimate interest in the identities of other clients Defendant does not claim she solicited or misappropriated.

Further, the information requested by Plaintiff is too remote from the time period contemplated by the employment agreement at issue.  (Doc. 90, Exh. 3.)[3]  In that agreement, Plaintiff agrees not to engage in certain activities involving customers on Defendant's books, and/or potential customers solicited by Defendant, at the time of her termination "or within twelve months prior thereto."  The parties have stipulated that Plaintiff's employment was terminated effective April, 2005.  (Doc. 77, ¶ 4(a)(3).)  Thus, the requested client list (seeking Defendant's clients as of January 1, 2000) is not relevant to Defendant's counterclaims of solicitation and/or misappropriation of clients or potential clients in existence as of Plaintiff's termination or 12 months prior thereto.  For the

---

[3] The Court acknowledges the existence of two employment agreements in this case (Doc. 90, Exhs. 3, 4), but is not commenting on the enforceability or legitimacy of either agreement.  The first of these agreements, dated January 3, 2000, (Doc. 90, Exh. 3) is particularly relevant to Defendant's counterclaims (breach of contract, violation of the Kansas Uniform Trade Secrets Act, and tortious interference with a prospective business advantage) as it contains certain "noncompete" recitals.  Thus, that agreement is relevant to a discussion of Plaintiff's Request No. 14, which, according to Plaintiff, "more specifically" relates to Defendant's counterclaims.  (Doc. 81 at 7.)

foregoing reasons, this portion of Plaintiff's motion is **DENIED**.

**D.     Request No. 15**.

This request seeks "the 'activity log' referenced in the June 30, 2006, deposition of Roger Winfrey reflecting the activity on each account, sorted by producer, and by date from January 1, 2000, to the present."[4]  (Doc. 81, Exh. 2.) Plaintiff argues that Winfrey testified she arrived to work late "on some unspecified day" and that the activity log did not evidence that she may have been calling on customers at the time.[5]  Plaintiff argues the document is now discoverable "[b]ecause Mr. Winfrey made [it] an issue in this case..." (Doc. 81 at 8.)  Plaintiff also contends that

> male producers were not required to be at the office from 8 am to 5 pm and took numerous days off without having to take vacation pay.  The defendant's position has been that the male producers were on golf outings or sporting events with clients.  However, now that plaintiff has requested the documentation demonstrating when and how these male producers were soliciting clients, the defendant has objected...

---

[4] At the February 13, 2007, hearing, the Court conducted an *in camera* inspection of a limited portion of the activity log covering the first few days of January, 2000, and provided a general description of its form and content on the record without divulging any specific proprietary information contained therein.

[5] Unfortunately, Plaintiff has failed to provide the Court with the relevant pages from Winfrey's deposition.  The Court notes, however, that Defendant does not dispute Plaintiff's characterization of Mr. Winfrey's testimony.  As such, the Court will accept the description as accurate.

9

(Doc. 96 at 9.)

Defendant objects that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Doc. 81, Exh. 2.) Further, Defendant contends that "this request would result in defendant disclosing proprietary and confidential information to a competitor." (*Id*.) More specifically, Defendant contends that "the daily client contacts and activities of IPC's current producers have absolutely no bearing on the claims plaintiff makes in this case." (Doc. 90 at 14.)

The Court agrees with Plaintiff's contention that, at least to some extent, Mr. Winfrey has placed the activity log at issue in this case by testifying it did not indicate that Plaintiff was meeting with clients on the unspecified day(s) on which she was allegedly tardy. However, the Court is also mindful of Defendant's concerns regarding disclosure of proprietary information to a competitor and former employee, especially given the nature of Defendant's counterclaims. Based on the Court's review of a small portion of the activity log, the document contains client names as well as information regarding policy renewals and cancellations.

At the hearing, Defense counsel advised that the log was prepared in an Excel spreadsheet computer format and could therefore be sorted in various ways,

including by a specific producer's name and activity.[6] The Court therefore finds it appropriate for Defendant to sort the log by producer name and produce <u>only</u> that portion of the log where Plaintiff is identified as the producer, and further limited to the inclusive dates of Plaintiff's employment, January 1, 2000, through and including April 30, 2005.[7] The sorted activity log will be produced pursuant to the protective order provisions set out in this Order.  The order production will allow Plaintiff to review the document for any references relevant to Mr. Winfrey's testimony about Plaintiff's tardiness, while protecting Defendant from the disclosure of any proprietary information to which Plaintiff would not have had prior access.  As such, this portion of Plaintiff's motion is **GRANTED**, with the stated limitations.

**E.     Request No. 20**.

Plaintiff's Request No. 20 seeks "any and all documents reflecting the employment benefits, e.g., health care, disability, 401(k), vacation, sick leave, etc., received by each producer or customer service representative of IPC from January 1, 2000, to the present." (Doc. 81, Exh. 2.)  Plaintiff, who never worked as a

---

[6] While a paper copy of the Activity Log would be voluminous (Defendant's counsel estimated over 16,000 pages in length), a sorted computer production in Excel spreadsheet format would not be overly burdensome for Defendant.

[7] The Court fails to see how portions of the activity log created *after* the termination of Plaintiff's employment would be relevant.

customer service representative for IPC, argues this information is relevant to her claims of discrimination and violation of the Equal Pay Act. (Doc. 81 at 9.)

Defendant objected that the request is irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Doc. 81, Exh. 2.) More specifically, Defendant argues that benefits information regarding customer service representatives ("CSRs") is irrelevant because Plaintiff never held that position for Defendant. Defendant also argues that producing personnel information of all producers and CSRs "would unnecessarily reveal personal information about people who are not parties to this litigation." (Doc. 90 at 16.) Even so, Defendant has produced a summary of benefits available to producers as well as the W-2 Wage and Tax Statements for all male producer/agents, which indicates the commission level paid to the specific individual for the stated year. (*Id.* at 15-16.) According to Defendant, "[f]rom these two pieces of information, plaintiff already knows what benefits were provided to each male producer/agent." (*Id.* at 16.)

Plaintiff counters that "when comparing the plaintiff to her male counterparts, it is essential to determine what benefits each male counterpart actually received, not just the possible benefits that may or may not be offered." (Doc. 96 at 10.) Plaintiff points to a passage from Defendant's Motion for

Summary Judgment in which Defendant contends that Plaintiff has presented "no information about how much vacation time Mike Chrisman had coming, how much vacation he may have accrued prior to her employment with the company, how much vacation time he carried forward, or how much vacation time he used." (Doc. 88, at 19, ¶ 58.)  The Court agrees that Defendant's arguments in response to the Motion to Compel conflict with the position Defendant has taken in the context of its Motion for Summary Judgment.  Defendant cannot object to Plaintiff's discovery request on one hand while relying on her lack of that same information for summary judgment purposes.  Defendant will therefore be required to produce the requested information as to each Producer for the requested time period.

On the other hand, the Court cannot find any evidentiary value in Plaintiff's request for this type of information regarding Customer Service Representatives.  Plaintiff was a producer/agent and did not ever work as a customer service representative for Defendant.  Plaintiff does not contest the fact that the two positions have different job duties.  Thus, in the Court's opinion, nothing of evidentiary value can be gleaned from comparing the benefit information of individuals performing different jobs for the same employer.  Further, all CSR positions have been filled by women.  Therefore, there can be no evidence of a discriminatory pattern and practice by Defendant as to benefits provided to

employees within that job category.  The request, as it relates to benefits information regarding CSRs, is not reasonably calculated to lead to the discovery of admissible evidence.  As such, the portion of Plaintiff's motion relating to benefits received by customer service representatives is **DENIED**.

The Court also recognizes Defendant's concerns regarding the provision of personal information of its male producer/agents who are not parties to this litigation, while noting that Defendant has previously provided the W-2 forms for these individuals.  The Court finds that Defendant shall provide Plaintiff with the requested documentation regarding the employment benefits actually received by (and not just potentially available to) each producer/agent from 2000 to 2005 (the years of Plaintiff's employment).  Such documentation shall be redacted to conceal any and all other personal information of these employees (other than names, dates of employment, and the specific benefits information).  Redacted information shall include, but not be limited to, Social Security number, date of birth, address, and/or telephone number.  The benefits information will be produced pursuant to the protective order provisions set out in this Order.   Thus, the portion of Plaintiff's motion relating to benefits received by producer/agents is **GRANTED**, with the stated limitations.

        **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc.

80) is DENIED IN PART and GRANTED IN PART as more specifically set forth in this Memorandum and Order.

IT IS FURTHER ORDERED that any of the documents (or computer information) produced by Defendant pursuant to this Memorandum and Order shall be considered as "Confidential Information" which is subject to the terms and provisions of the Protective Order (Doc. 18) previously entered in this case with the following additional protection:

1. Plaintiff, Joan Fusco, shall not be considered as a "Qualified Person" as defined in the Protective Order for purposes of the information produced pursuant to this Memorandum and Order;

2. Because the parties have now stipulated that no expert witnesses will testify in this case, *see* Pretrial Order (Doc. 77) at 37, ¶ 15(c), there will be no disclosure of the information produced pursuant to this Memorandum and Order to any retained or consulting expert; and

2. Plaintiff's counsel shall not allow Plaintiff, Joan Fusco, to see, read or copy any of the information produced pursuant to this Memorandum and Order, and such information shall be retained by Plaintiff's counsel for its use only in the preparation of this case.

**IT IS FURTHER ORDERED** that Defendant shall provide Plaintiff with

copies of the requested information not later than March 1, 2007.

Dated at Wichita, Kansas on this 14th day of February, 2007.

    s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge